Argued and submitted May 13, affirmed October 12, 1983

# RICE,
*Appellant,*

*v.*

# TERWILLIGER PLAZA, INC.,
*Respondent.*

## (A8108-04748; CA A26505)

670 P2d 188

J. Robert Jordan, Portland, argued the cause for appellant. On the brief was Michael R. Jordan, Portland.

Donald J. Morgan, Portland, argued the cause for respondent. With him on the brief were Paul N. Wonacott and Wood, Tatum, Mosser, Brooke & Holden, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff, the personal representative of decedent Ethel Rice, seeks a refund of monies that decedent paid defendant pursuant to a "residence agreement." The trial court concluded that the right to obtain a refund, which could only result from a termination of the landlord and tenant relationship between decedent and defendant, could only be exercised by decedent. Accordingly, the trial court dismissed plaintiff's suit with prejudice. We affirm.

On December 1, 1980, decedent moved into a retirement home owned and operated by defendant. On December 8, she and defendant entered into a contract entitled "Agreement Covering Residence at Terwilliger Plaza, Inc." The pertinent portions of the agreement are:

"* * * * *

"3. The Member agrees to pay as a membership fee to the Plaza, the sum of $17,160.00, receipt of which is hereby acknowledged by the Plaza.

"4. *The Plaza agrees that in the event the Member dies,* or in the event the Member is unable to meet the health requirements of the Plaza, *prior to moving into the Plaza,* or, in the event the Member's application is not accepted, *then the Plaza,* in one of those events, *will refund to the Member, or his or her estate, the full amount paid by the Member to the Plaza.*

"* * * * *

"7. It is agreed between the parties that there is a probationary period of six months from the date of occupancy during which time either party may terminate the agreement. After the probationary period expires, the member shall in no event be entitled to receive a refund.

*"The member's right to terminate* this agreement during the probationary period *is limited to the member, and must be exercised by the member himself or herself personally by notifying the Plaza in writing of such termination.* * * *

"* * * * *" (Emphasis supplied.)

Decedent remained at the residence until May 18, 1981—approximately five and one-half months—when she died. Plaintiff then attempted, within the six-month probationary period, to terminate the agreement and to receive the refund on behalf of Mrs. Rice's estate. Defendant refused to

make the refund, citing the contract provisions quoted above. Plaintiff filed a lawsuit claiming that the estate was entitled to a refund of the membership fee. As noted above, the trial court dismissed the action after concluding that plaintiff was not entitled to exercise decedent's right of cancellation. This appeal followed.

Plaintiff contends that, because the contract does not contain a paragraph dealing with the possibility that a member may *die* during the probationary period, as opposed to voluntarily terminating membership, the contract is ambiguous and must be construed in accordance with various rules of contract interpretation. We disagree.

Paragraph 4 of the agreement states that a member who dies *prior to* moving into the residence is entitled to a refund to be paid to the member's estate. Paragraph 7 makes it clear that, once the six-month probation period has begun, the member may obtain a refund only by *personally* notifying defendant *in writing* of the member's decision to terminate. There is no ambiguity.[1]

One final point merits mention. Paragraph 7 was included in the residence agreement pursuant to the requirement of ORS 91.690(1), which states:

> "Any retirement facility which requires any resident, as a condition of occupancy or use of the facility, to pay any sum, including a buy-in charge or down payment, prior to or during the first six months of occupancy in addition to monthly payments shall provide that the full buy-in charge or down payment, less actual costs of the home, *be refunded to the resident if, for any reason, the resident withdraws from the retirement facility* within the first six months of occupancy." (Emphasis supplied.)

---

[1] Plaintiff argues that the contract is ambiguous because it does not expressly provide for the situations presented in this case and that, given the ambiguity, an action for a refund may be maintained under ORS 115.305 and the common law principle that *forfeitures are not favored*. Plaintiff cannot prevail on these arguments because (1) the contract is not ambiguous, as explained above, (2) defendant's retention of the $17,000 is not a "forfeiture," and (3) ORS 115.305 does not apply to this case. That statute provides:

> "All causes of action or suit, by one person against another, survive to the personal representative of the former and against the personal representative of the latter."

Here, at the time of decedent's death, there was no cause of action or suit in existence.

If death constituted a "withdrawal" under the statute, the terms of this residence agreement would be inconsistent with statutory requirements, and plaintiff's estate would be entitled to a refund. However, the legislative history indicates that death was not the type of "withdrawal" contemplated by the legislature when it adopted ORS 91.690. The statute was drafted in 1975 by the legislative Joint Committee on Aging. After the bill had passed the Senate, a staff person to the committee described it to the House State and Federal Affairs Committee:

> "* * * [T]his bill was introduced to answer a specific problem with retirement homes. * * * The problem comes when a person buys into a retirement home and after a couple of months decides that he or she *cannot adjust to the home.* * * * The bill would allow the people to have *six months to adjust* and if during that time they decide not to remain in the home, they may have their money back less the actual living costs of the home. All expenses of the home incurred during their stay would be deducted. *This bill would give people a period of time to adjust to their new surroundings and decide what they want to do.*" (Emphasis supplied.)

Nothing in the legislative history that we have found indicates a different purpose for this provision. It is clear that the legislature was concerned with the person who cannot adjust to retirement home life and needs a refund in order to make different living arrangements. It was not concerned with the size of the person's estate after death.

Affirmed.